**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| RICHARD INZA, *et al.*,<br>*Plaintiffs*,<br>v.<br>APPLE INC., *et al.*,<br>*Defendants*. | Civil Action No. 25-1970 (RDM) |

**MEMORANDUM OPINION AND ORDER**

This is one of four related cases pending before the Court involving overlapping parties and claims. All four cases allege that Apple Inc., Alphabet Inc., Google LLC, and Samsung Electronics America Inc. ("the Platform Defendants") and Verizon Wireless, AT&T, and T-Mobile ("the Carrier Defendants") have conspired to create a market in which smartphone users must pay supracompetitive prices for Wi-Fi calling, a wireless voice service that relies on Wi-Fi to route calls over broadband internet networks instead of through cell towers. Each of the Carrier Defendants offers Wi-Fi calling for "free" or at "no additional charge" with the purchase of certain cellular plans, and each of the Platform Defendants sells smartphones that employ operating systems that support wireless voice services offered by the Carrier Defendants and others. In the first of the four cases (24-cv-3051), the corporate plaintiff, VoIP-Pal.com, Inc. ("VoIP-Pal"), asserts various antitrust claims against the Carrier Defendants. In the second case (24-cv-3054), Richard Inza ("R. Inza"), Michael Inza ("M. Inza"), and Ray Leon (collectively, "the Individual Plaintiffs"), along with VoIP-Pal, assert similar antitrust and other claims both individually and on half of a putative class against the Carrier Defendants. And, in the third case

(25-cv-1843), VoIP-Pal asserts various antitrust and other claims against the Platform Defendants.

In the present case, the fourth case, the Individual Plaintiffs and VoIP-Pal (collectively, "Plaintiffs") assert similar claims, both individually and on behalf of a putative class, against the Platform Defendants. Although Plaintiffs' Amended Complaint is not the picture of clarity, it alleges that the Platform and Carrier Defendants "have combined and conspired to monopolize or [to] attempt to monopolize native telephony calling (including Wi-Fi Calling) and have foreclosed independent competition in the market." Dkt. 7 at 2 (Am. Compl. ¶ 1). Plaintiffs allege, among other things, that the Platform Defendants have designed their operating systems and firmware to permit only the Carrier Defendants and their affiliates to offer wireless voice services integrated with the "native telephony" features of their devices. *Id.* at 2 (Am. Compl. ¶ 2). Those "native telephony" features are the "default phone" features of a smartphone, which include the phone app, contact list, voicemail, emergency services, and default notifications. *Id.* at 3, 5–6 (Am. Compl. ¶¶ 5, 12–13). Plaintiffs further allege that the Platform Defendants' operating systems will unlock these features of the smartphone only when presented with a SIM card or eSIM that presents carrier credentials. *Id.* at 5 (Am. Compl. ¶ 12). As a result, the Carrier Defendants may directly access the default phone features, but others providing wireless voice services must do so through third-party apps that offer a "degraded" experience because "incoming calls . . . are not recognized as native incoming calls, do not wake the [p]hone app, appear in the call log, or allow access to emergency functions." *Id.* at 6, 38, 43 (Am. Compl. ¶¶ 14, 95, 108). Although the Carrier Defendants are not parties to this suit, they are—on Plaintiffs' telling—central to the alleged conspiracy and, among other things, provide the

"SIM/eSIM entitlements" and other inputs required to unlock the default phone features of Apple and Android devices. *Id.* at 2, 8 (Am. Compl. ¶¶ 1, 19).

The bottom line, according to Plaintiffs, is that Platform and Carrier Defendants have conspired to create a market in which smartphone users must either "pay supracompetitive bundle prices" to use the default calling functions of their phones or use third-party apps that offer a subpar experience. *Id.* at 10 (Am. Compl. ¶ 26). Plaintiffs allege that but for this allegedly unlawful conspiracy, a competitor could offer a standalone Wi-Fi calling service that uses the native telephony features of Apple and Android devices "at far lower prices" than the bundled cellular plans offered by the Carrier Defendants. *Id.*

In this action, Plaintiffs assert four claims against the Platform Defendants. Counts One and Two allege that they have violated the Sherman Act by preventing non-carrier wireless service providers "from accessing native telephony [features] on virtually all smartphones in the United States," *id.* at 66 (Am. Compl. ¶ 166), and by requiring consumers to buy bundled cellular plans to "unlock native calling (including Wi-Fi calling)" on their devices, *id.* at 67 (Am. Compl. ¶ 168). Counts Five and Six allege violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"). More specifically, they allege the existence of an association in fact—consisting of either the Platform Defendants or the Platform Defendants and the Carrier Defendants—created to "mislead consumers and to obtain and maintain monopoly power in the market for Wi-Fi calling."[1] *Id.* at 74, 77 (Am. Compl. ¶¶ 200–01, 211).

The Platform Defendants have filed a joint motion to dismiss for lack of subject-matter jurisdiction and for failure to state a claim. *See* Dkt. 29. In addition, as relevant here, Samsung

[1] Plaintiffs' Amended Complaint originally included eight counts, but Plaintiffs stipulated to the dismissal with prejudice of Counts Three, Four, Seven, and Eight. Dkt. 40 at 1.

has separately moved to compel arbitration and to stay any non-arbitrable claims against it pending arbitration. *See* Dkt. 30. Samsung asks the Court to resolve its motion to dismiss for lack of subject-matter jurisdiction and, if necessary, its motion to compel arbitration before addressing any of its Rule 12(b)(6) grounds for dismissal. *See* Dkt. 29-1 at 15 n.5. In support of its motion to compel, Samsung first argues that the Individual Plaintiffs must arbitrate the claims at issue in this case based on their subscriber agreements with Verizon Wireless and T-Mobile, which contain arbitration clauses, and on "well-established principles of equitable estoppel," which render those agreements enforceable in cases brought against other defendants alleging interdependent and concerted misconduct by the signatory and non-signatory defendants. Dkt. 30-1 at 10, 28. Because Plaintiffs allege that (1) the Platform Defendants conspired to allow the Carrier Defendants to charge supracompetitive prices for Wi-Fi calling; (2) the Platform Defendants and Carrier Defendants are unlawfully tying native telephony features and "carrier bundles;" and (3) the Platform Defendants have violated RICO based on statements made by the Carrier Defendants about the price of Wi-Fi calling, and seek damages for being charged too much under their subscriber agreements, their claims all arise out of, relate to, and concern their subscriber agreements with T-Mobile and Verizon. *See* Dkt. 7 at 9–11, 74–76 (Am. Compl. ¶¶ 22–26, 199–209); Dkt. 30-1 at 55–56. But, if equitable estoppel does not apply, Samsung asks the Court to enforce R. Inza's and Leon's agreements to arbitrate their claims against Samsung. *Id.* at 40.

Finally, the Platform Defendants ask the Court to dismiss VoIP-Pal's claims in this action on the ground that they are "essentially identical" to the claim that VoIP-Pal asserts against them in the earlier-filed case (25-cv-1843). Dkt. 29-1 at 11, 41–42. As they point out, the rule against

claim splitting bars a party from maintaining two actions involving the same parties and same subject matter in the same court at the same time. *See id.* at 41–42.

Because the Court will grant Samsung's motion to compel arbitration on equitable estoppel grounds, it need not address the enforceability of Samsung's arbitration agreements with R. Inza and Leon. The Court will also grant Apple Inc., Alphabet Inc., and Google LLC's motion to dismiss VoIP-Pal's claims in this action on the grounds of improper claims splitting and, for similar reasons, will sua sponte dismiss VoIP-Pal's claims against Samsung.

## I. BACKGROUND

In support of its motion to compel arbitration, Samsung offers sworn declarations and other exhibits showing that each Individual Plaintiff entered into a subscriber agreement containing an arbitration clause with either T-Mobile or Verizon. *See* Dkt. 30 (Exs. 2, 5–61). Plaintiffs have neither disputed any of Defendants' factual allegations nor proffered any controverting evidence of their own. *See* Dkt. 35 at 9–10. The Court, accordingly, relies on the following undisputed facts for purposes of resolving the pending motion. Moreover, because the Court concludes that Samsung is entitled to compel arbitration based on the Individual Plaintiffs' agreements to arbitrate their parallel claims against the Carrier Defendants and on principles of equitable estoppel, the Court focuses on those agreements, rather than the separate arbitration agreements that some of the Individual Defendants entered into with Samsung itself.

### A. T-Mobile

With respect to T-Mobile's arbitration clause, Samsung relies on a declaration executed by Judy Sanchez, whose job responsibilities at T-Mobile include "review, analysis, and research of litigation and arbitration matters, and acting as a custodian of T-Mobile's records." Dkt. 30-34 at 2 (Sanchez Decl. ¶ 2). Sanchez attests that Plaintiff Michael Inza has had a T-Mobile account since April 30, 2016. *Id.* at 3 (Sanchez Decl. ¶ 4). When he activated his account, M.

Inza agreed to T-Mobile's Terms and Conditions, which contained a mandatory arbitration provision and a class action waiver. *Id.* at 3 (Sanchez Decl. ¶ 5); *see* Dkt. 30-35 at 4, 10–11. Since 2016, M. Inza "has repeatedly been presented with and agreed to T-Mobile's [Terms & Conditions] by using and paying for T-Mobile services and/or devices." Dkt. 30-34 at 3 (Sanchez Decl. ¶¶ 6, 16–28).

Most recently, M. Inza "was presented with and accepted the May 15, 2023 [Terms & Conditions] when he received a new phone pursuant to an equipment installment plan [] dated September 18, 2023." *Id.* at 5 (Sanchez Decl. ¶ 19). When the new phone was delivered, it would have come in a box with a sticker informing him that "[b]y purchasing or opening this package, activating, using or paying for service, you agree to the applicable **Terms & Conditions ("T&Cs") (including mandatory arbitration provisions)**" and directing him to T-Mobile's website where the T&Cs were available. *Id.* at 5 (Sanchez Decl. ¶ 19). He "would have needed to break or remove [the sticker] to open the box." *Id.*

The first page of the May 15, 2023, Terms and Conditions clearly notifies the customer that the agreement "contain[s] important information about your relationship with us, including individual mandatory binding arbitration of disputes between us, instead of class actions or jury trials." Dkt. 30-43 at 3. In a subsection titled "Dispute Resolution" beginning on page 5, the following paragraph appears:

> **YOU AND WE EACH AGREE THAT, EXCEPT AS PROVIDED BELOW, ANY AND ALL CLAIMS OR DISPUTES, OF ANY NATURE, INCLUDING TORT AND STATUTORY CLAIMS, IN ANY WAY RELATED TO OR CONCERING THE AGREEMENT, OUR PRIVACY NOTICE, PRIVACY OR DATA SECURITY PRACTICES, OUR SERVICES, DEVICES OR PRODUCTS, INCLUDING ANY BILLING DISPUTES, WILL BE RESOLVED BY INDIVIDUAL BINDING ARBITRATION OR IN SMALL CLAIMS COURT. THERE IS NO JUDGE OR JURY IN ARBITRATION, AND COURT REVIEW OF AN ARBITRATION AWARD IS LIMITED.**

*Id.* at 7. Three paragraphs later, the Terms and Conditions provide:

> **YOU MAY CHOOSE TO PURSUE YOUR CLAIM IN COURT AND NOT BY ARBITRATION IF YOU OPT OUT OF THESE ARBITRATION PROCEDURES WITHIN 30 DAYS FROM THE EARLIER OF THE DATE YOU PURCHASED A PRODUCT OR DEVICE FROM US OR THE DATE YOU ACTIVATED A NEW LINE OF SERVICE . . . .**

*Id.* The Terms and Conditions also contain the following class action waiver:

> **YOU AND WE EACH AGREE THAT ANY PROCEEDINGS, WHETHER IN ARBITRATION OR COURT, WILL BE CONDUCTED ONLY ON AN INDIVIDUAL BASIS AND NOT AS A CLASS, REPRESENTATIVE, MASS, OR CONSOLIDATED ACTION. If you opt out of the arbitration provision as specified above, this Class Action Waiver provision will not apply to you.**

*Id.* at 9. There is no indication that T-Mobile ever received an opt-out notice from M. Inza. Dkt. 30-34 at 6 (Sanchez Decl. ¶ 29).

**B. Verizon Wireless**

With respect to Verizon Wireless's arbitration agreement, Samsung relies on the declaration of Joseph Ninete, a "Senior Analyst" who "assist[s] with the handling of consumer disputes for Verizon Wireless." Dkt. 30-51 at 2 (Ninete Decl. ¶ 1). Ninete attests that "Plaintiff Richard Inza has been a customer of Verizon Wireless since in or around September 2016." *Id.* at 4 (Ninete Decl. ¶ 8). On October 2, 2016, Verizon sent R. Inza "a letter confirming his service activation which included a copy of the then-operative customer agreement." *Id.* at 10 (Ninete Decl. ¶ 9). The agreement set out the ways that a subscriber could accept the agreement, one of which is by "[a]ctivating your Service." Dkt. 30-56 at 5.

In August 2018, R. Inza "purchased a Samsung Galaxy S9 and executed . . . a Device Payment Agreement." Dkt. 30-51 at 4 (Ninete Decl. ¶ 10). The agreement required him to "AGREE TO AND MAINTAIN SERVICE WITH VERIZON WIRELESS UNDER YOUR

CUSTOMER AGREEMENT," which the agreement incorporated by reference. Dkt. 30-57 at 4. Concerning dispute resolution, in particular, the agreement provides:

> ADDITIONALLY, ANY DISPUTES UNDER THIS AGREEMENT (INCLUDING, WITHOUT LIMITATION, ANY DISPUTES AGAINST THE SELLER AND/OR VERIZON WIRELESS) SHALL BE RESOLVED IN ACCORDANCE WITH THE DISPUTE RESOLUTION PROVISIONS IN YOUR CUSTOMER AGREEMENT UNDER THE HEADING: HOW DO I RESOLVE DISPUTES WITH VERIZON WIRELESS, WHICH TERMS ARE INCOPRORATED BY REFERENCE. SPECIFICALLY, YOU AND VERIZON WIRELESS (AND/OR THE SELLER) AGREE TO RESOLVE ALL DISPUTES UNDER THIS AGREEMENT ONLY BY ARBITRATION OR SMALL CLAIMS COURT AND YOU WAIVE ANY RIGHT TO A JUDGE OR JURY IN ANY ARBITRATION

*Id.* at 4. In 2021 and 2023, R. Inza "purchased new devices and executed additional Device Payment Agreements," which also incorporate by reference the customer agreement and contain materially identical descriptions of the arbitration requirement. Dkt. 30-51 at 5 (Ninete Decl. ¶ 11); Dkt. 30-58 at 4; Dkt. 30-59 at 4.

Plaintiff Leon is also a Verizon Wireless subscriber. Dkt. 30-51 at 3 (Ninete Decl. ¶ 5). On April 4, 2025, he "purchased a new iPhone 16 and activated Verizon's Unlimited Plus Service." *Id.* "In connection with this purchase, Leon electronically signed a receipt stating that he had read and agreed to the Verizon Customer Agreement, including the settlement of dispute by arbitration instead of jury trial." *Id.*; *see* Dkt. 30-53 at 5. The agreement included a link to the full Customer Agreement. Dkt. 30-53 at 5.

The currently operative customer agreement went into effect on February 5, 2025. Dkt. 30-51 at 5 (Ninete Decl. ¶ 4). R. Inza was "notified of the update in the billing statement for his account for the period between January 29 and February 28, 2025." *Id.* at 5 (Ninete Decl. ¶ 14). Both R. Inza and Leon have used their Verizon Wireless services since the operative customer agreement went into effect on February 5, 2025. *Id.* at 3, 5 (Ninete Decl. ¶¶ 5, 13).

The first paragraph of the agreement highlights that it contains "important information" about subscribers' wireless service, including "**how any disputes between us must be resolved in arbitration or small claims court.**" Dkt. 30-52 at 2. The full text of the arbitration clause has a grey background distinct from the majority of the agreement. *Id.* at 6. It provides: "YOU AND VERIZON BOTH AGREE TO RESOLVE DISPUTES ONLY BY ARBITRATION OR IN SMALL CLAIMS COURT AS DISCUSSED BELOW. YOU UNDERSTAND THAT BY THIS AGREEMENT YOU ARE GIVING UP THE RIGHT TO BRING A CLAIM IN COURT OR IN FRONT OF A JURY." *Id.* As to scope, it provides that the arbitration agreement covers "ANY DISPUTE THAT IN ANY WAY RELATES TO OR ARISES OUT OF THIS AGREEMENT." *Id.* at 7.

The third paragraph of the arbitration provision states that "**THIS AGREEMENT DOESN'T ALLOW CLASS OR COLLECTIVE ARBITRATIONS**." *Id.* The last paragraph of the agreement further provides that "**IF FOR ANY REASON A CLAIM PROCEEDS IN COURT RATHER THAN THROUGH ARBITRATION . . . NO ACTION WILL BE BROUGHT ON A CLASS OR COLLECTIVE BASIS.**" *Id.* at 9.

* * *

Each of the Carriers' subscriber agreements specified that the agreement and the arbitration clause contained therein would be governed by the Federal Arbitration Act and the law of the state encompassing the billing address associated with each subscriber's Verizon account. Dkt. 30-43 at 9 (T-Mobile); Dkt. 30-52 at 8, 10 (Verizon Wireless). The billing address associated with each Individual Plaintiffs' account is in Florida. Dkt. 30-34 at 6 (Sanchez Decl. ¶ 30) (M. Inza); Dkt. 30-51 at 3–4 (Ninete Decl. ¶¶ 5, 8) (R. Inza and Leon).

Plaintiffs oppose Samsung's motion to compel arbitration, but they do not dispute or otherwise controvert any of these facts. *See* Dkt. 35 at 9–10.

## II. LEGAL STANDARD

The Federal Arbitration Act ("FAA") "places arbitration agreements on equal footing with other contracts, and requires courts to enforce them according to their terms." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010) (internal citation omitted). "Section 2 of the [FAA] makes agreements to arbitrate 'valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 336 (2011) (quoting 9 U.S.C. § 2). The FAA "reflec[s] both a liberal federal policy favoring arbitration, and the fundamental principle that arbitration is a matter of contract." *Id.* at 339 (internal citations and quotation marks omitted). "A motion to compel arbitration is decided on a summary judgment standard." *Dist. No. 1, Pac. Coast Dist., Marine Eng'rs' Ben. Ass'n, AFL-CIO v. Liberty Mar. Corp.*, 998 F.3d 449, 456 (D.C. Cir. 2021).

"Because the party seeking to enforce an arbitration agreement bears the burden of proving that the other party agreed to arbitrate, . . . the party seeking to compel arbitration must first present evidence sufficient to demonstrate an enforceable agreement to arbitrate." *Osvatics v. Lyft, Inc.*, 535 F. Supp. 3d 1, 9 (D.D.C. 2021) (internal citations, brackets, and quotation marks omitted). "The burden then shifts to the non-moving party to raise a genuine issue of material fact as to the making of the agreement, using evidence comparable to that identified in Rule 56." *Id.* (internal citations and quotation marks omitted). "The court must grant summary judgment with respect to the formation of an arbitration agreement if the pleadings and evidence show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Id.* (internal citations and quotation marks omitted). But if the

Court concludes that a "genuine dispute of material fact exists as to the making of the arbitration agreement, including whether the parties assented to the agreement," the case must "proceed summarily to trial solely on the issue of arbitrability." *Jin v. Parsons Corp.*, 966 F.3d 821, 827 (D.C. Cir. 2020) (internal quotations omitted).

## III. ANALYSIS

### A. Article III Standing

The Platform Defendants' motion to dismiss challenges the Court's subject-matter jurisdiction on the grounds that Plaintiffs lack Article III standing. *See* Dkt. 29-1 at 15–17. Because standing is a threshold jurisdictional issue, the Court begins by assuring itself it has jurisdiction. To establish standing, a plaintiff must show that they suffered an (1) "injury in fact" that was (2) "caused by the defendant" and (3) "would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). In the complaint, Plaintiffs allege that they are "device owner[s] who [] paid supracompetitive bundle charges to unlock native calling on their own phone." Dkt. 7 at 30 (Am. Compl. ¶ 80). Defendants do not dispute that the payment of supracompetitive prices for bundled cellular service and Wi-Fi calling would qualify as an Article III injury; indeed, "monetary harms" are a quintessential Article III injury. *TransUnion LLC*, 594 U.S. at 425; *see Marion Diagnostic Ctr., LLC v. Becton Dickinson & Co.*, 29 F.4th 337, 345 (7th Cir. 2022) ("paying inflated prices due to an anticompetitive scheme will satisfy injury-in-fact"). Instead, they argue only that Plaintiffs "allege no facts to establish . . . that they purchased such a bundle." Dkt. 29-1 at 16.

That contention is based on the premise that "Plaintiffs allege no facts to establish either that they purchased" bundled cellular services that were priced at a supracompetitive level, facts indicating "from which Defendant, if any, they purchased such a bundle," or facts indicating

"that they would have purchased standalone Wi-Fi calling but from the bundle." *Id.* But Plaintiffs allege that they "purchased and own smartphones," Dkt. 7 at 18 (Am. Compl. ¶ 48), and that they "paid supracompetitive bundle changes to unlock native calling on their phone[s]" and/or "suffered functional degradation when declining the [alleged] tie," *id*. at 30 (Am. Compl. ¶ 80). They further allege, moreover, that this economic loss is "fairly traceable to" the Platform and Carrier Defendants' conspiracy "to deny native functionality" to competing service providers. *Id.* They allege, for example, that "[a] stand-alone Wi-Fi Calling option could cost as little at $6.50 per month for an individual or $20 for a family of four," as compared to the costs of $90 to $110 per month that "families must routinely pay" for voice, text, and mobile data services." *Id.* at 11 (Am. Compl. ¶ 26). Finally, they allege that these supracompetitive costs would be avoided were the Court to order the Platform Defendants to permit "parity access via neutral certification" and not to re-impose a "lock" in the future. *Id.* at 31 (Am. Compl. ¶ 82).

The combination of Plaintiffs' allegations and the uncontroverted evidence before the Court is sufficient to establish the Court's subject-matter jurisdiction. *See also Oxbow Carbon & Mins. LLC v. Union Pac. R.R. Co.*, 81 F. Supp. 3d 1, 7 (D.D.C. 2015) (plaintiffs sufficiently alleged injury in fact for Sherman Act, Section 1 claim by alleging that "each plaintiff paid 'fuel charges . . . that they would not have paid in the absence of the conspiracy" even though they did not state "to whom plaintiffs . . . paid those surcharges"). This is neither the time nor (at least as to Samsung) the forum to determine whether these allegations have any factual or legal merit. Plaintiffs have adequately alleged, however, that they have suffered economic loss due to the alleged conspiracy and the extraction of supercompetitive prices for Wi-Fi calling services.

The Court, accordingly, concludes that it has Article III standing to consider the parties' respective arguments.

### B. Forfeiture or Waiver

The Court begins with Plaintiffs' argument that Samsung has waived its right to arbitrate their claims. "Under the FAA a litigant is entitled to a stay pending arbitration so long as the suit in which he is a party is 'referable to arbitration' under a valid agreement and he 'is not in default in proceeding with such arbitration.'" *Zuckerman Spaeder, LLP v. Auffenberg*, 646 F.3d 919, 921 (D.C. Cir. 2011) (quoting 9 U.S.C. § 3). Plaintiffs cite *National Foundation for Cancer Research v. A.G. Edwards & Sons, Inc.*, 821 F.2d 772 (D.C. Cir. 1987), for the proposition that "[a] party may waive its right to arbitration by acting 'inconsistently with the arbitration right.'" Dkt. 35 at 32. "By simultaneously seeking dismissal with prejudice and compelling arbitration," Plaintiffs argue, "Samsung has invoked the judicial merits process in a manner inconsistent with a genuine commitment to arbitration." *Id.*

Although Plaintiffs accurately state the standard for waiver set out in *National Foundation for Cancer Research*, the D.C. Circuit has since clarified that "forfeiture, not waiver, is the appropriate standard for evaluating a late-filed motion under Section 3 of the FAA." *Zuckerman Spaeder*, 646 F.3d at 922; *accord Kelleher v. Dream Catcher, L.L.C.*, 729 F. App'x 4, 6 (D.C. Cir. 2018); *see also Morgan v. Sundance, Inc.*, 596 U.S. 411, 416–17 (2022) (declining to decide whether waiver or forfeiture is the appropriate procedural framework under the FAA); *Harris v. Med. Transp. Mgmt., Inc.*, No. 17-CV-1371, 2019 WL 11320367, at *1–*2 (D.D.C. Dec. 5, 2019) (applying only the standard for forfeiture to question of default under FAA § 3). "Forfeiture is the 'failure to make a timely assertion of a right' and, unlike waiver, entails no element of intent." *Zuckerman Spaeder*, 646 F.3d at 922 (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993)).

A party presumptively forfeits its right to arbitrate if it fails to "invoke[] the right to arbitrate on the record at the first available opportunity, typically in filing his first responsive pleading or motion to dismiss." *Id.* In *Zuckerman Spaeder*, the D.C. Circuit held that the defendant had "failed to make a timely assertion of his right to arbitrate" because he "failed to invoke arbitration in (or before filing) his original answer," and the record did not support his assertion that he "told Zuckerman early and often of his intention to arbitrate." *Id.* at 923. This case presents the opposite scenario. Samsung has consistently signaled its intention to seek to compel arbitration to the Court, Dkts. 17, 24 (seeking extensions of time to file a motion to dismiss or a motion to stay pending arbitration), and it filed its motion to compel arbitration at the earliest possible opportunity, *see* Dkt. 30-1. Under *Zuckerman Spaeder*, Samsung preserved its right to arbitrate by moving to compel arbitration at the "first available opportunity." 646 F.3d at 922.

Furthermore, to the extent that *Zuckerman Spaeder* leaves any role for the "inherently fact-bound" waiver analysis when a defendant concurrently files a motion to stay and a motion to dismiss with prejudice, *id.* at 922, the Court further concludes that Samsung has not acted inconsistently with an intent to arbitrate. In the D.C. Circuit precedent describing default in terms of waiver, the court described "active participation in a lawsuit" as an example of conduct inconsistent with an intent to arbitration. *Khan v. Parsons Glob. Servs., Ltd.*, 521 F.3d 421, 425 (D.C. Cir. 2008) (citation modified); *Nat'l Found.*, 821 F.2d at 775. More generally, the court of appeals has focused on litigation efforts that signify "a conscious decision" to leave substance claims and defenses (even if otherwise arbitrable) before the court for decision. *Khan*, 521 F.3d at 427 (citation modified); *Nat'l Found.*, 821 F.2d at 776; *see also Winston & Strawn, LLP v. Doley*, 654 F. Supp. 2d 17, 21 (D.D.C. 2009). To give litigants "a second bite at the very

questions presented to the court for disposition squarely confronts the policy that arbitration may not be used as a strategy to manipulate the legal process." *Nat'l Found.*, 821 F.2d at 776.

Samsung's concurrent filings do not evince an intent to have the Court decide the substance of Plaintiffs' claims or an attempt to take a forbidden second bite at legal issues already decided by the Court. Both the Platform Defendants' motion to dismiss and Samsung's motion to compel arbitration stress that the Court should decide Samsung's motion to compel arbitration before reaching any of its arguments under Rule 12(b)(6). Dkt. 30-1 at 11; Dkt. 29-1 at 15 n.5. That request reflects Samsung's intent to submit all of the Individual Plaintiffs' claims against it to arbitration and to address only the merits of non-arbitrable claims before this Court. So, unlike in prior cases in which the D.C. Circuit has found waiver of the right to arbitrate, Samsung has not "made a conscious decision to exploit the benefits of pretrial discovery and motion practice" and have the substance of Plaintiffs' claims decided by the Court. *Nat'l Found.*, 821 F.2d at 776 (defendant waived right to arbitrate by answering complaint, instigating extensive discovery, moving for partial summary judgment, engaging in settlement negotiations, and setting case for trial); *Khan*, 521 F.3d at 428 (defendant waiver the right to arbitrate by filing motion for summary judgment based on materials outside the pleadings); *see also Forby v. One Techs.*, L.P., 909 F.3d 780 (5th Cir. 2018) (finding waiver but distinguishing cases holding "that the party seeking arbitration did not invoke the judicial process because its motion to dismiss was filed concurrently with a motion to seek arbitration").

Finally, although Plaintiffs do not press the point, the Court notes that the Platform Defendants' request that the Court dismiss VoIP-Pal's claims in this action does not constitute a waiver or forfeiture of Samsung's request to arbitrate. To start, Samsung never argues that those claims are subject to arbitration, and it does not ask the Court to compel VoIP-Pal to arbitrate its

claims against Samsung. But beyond that difficulty, Samsung merely asks that the Court stay VoIP-Pal's claims against it pending arbitration, and it is clear that it is not asking the Court to adjudicate the merits of any of Plaintiffs' claims before deciding whether to compel arbitration. Dkt. 29-1 at 15 n.5. As discussed further below, the Court has concluded sua sponte that VoIP-Pal's claims against Samsung in this action should be dismissed on grounds of claim splitting—rather than merely stayed pending arbitration. But that sua sponte action cannot possibly constitute a waiver or forfeiture by Samsung. The Court merely concluded that there is no reason to maintain VoIP-Pal's duplicative claims in this action—and thus unnecessarily to clutter the Court's docket—even while the Individual Plaintiffs' claims against Samsung are in arbitration.

**C. Arbitration**

Although Samsung entered into arbitration agreements with R. Inza and Leon, it asks the Court to compel all of the Individual Plaintiffs to arbitrate their claims against it based on their separate arbitration agreements with T-Mobile and Verizon. Dkt. 30-1 at 10. It relies on Florida's doctrine of equitable estoppel, which is an exception to the ordinary rule that "a party cannot compel arbitration under an arbitration agreement to which it was not a party." *Beck Auto Sales, Inc. v. Asbury Jax Ford, LLC*, 249 So. 3d 765, 767 (Fla. Dist. Ct. App. 2018); *see also Marcus v. Fla. Bagels, LLC*, 112 So. 3d 631, 633–34 (Fla. Dist. Ct. App. 2013). Equitable estoppel allows a non-signatory to compel arbitration against a signatory under limited circumstances. *See Bergeron Env't & Recycling, LLC v. LGL Recycling, LLC*, 398 So. 3d 988, 995 (Fla. Dist. Ct. App. 2024). The Supreme Court has recognized that "the FAA permits a nonsignatory to rely on state-law equitable estoppel doctrines to enforce an arbitration agreement." *GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA,*

*LLC*, 590 U.S. 432, 438 (2020); *accord Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631–32 (2009).

The Individual Plaintiffs do not dispute that they each entered into an arbitration agreement with either T-Mobile or Verizon, nor do they challenge the enforceability of *those* agreements (as opposed to the separate Samsung agreements). They object to arbitration pursuant to their subscriber agreements on two grounds. First, they argue that equitable estoppel does not require them to arbitrate their claims against Samsung because those claims "do not depend on rights or obligations created by [their subscriber] contracts" with T-Mobile and Verizon. Dkt. 35 at 17. On their telling, Florida law requires "that the claim against the non-signatory actually depend on the contract containing the arbitration clause." *Id.* Second, they argue in a perfunctory fashion that the carrier subscriber agreements do not cover their claims because they "govern billing relationships between carriers and consumers, not the design of Samsung firmware embedded in smartphones before any carrier relationship exists." *Id.*

1. *Equitable Estoppel*

Plaintiffs' objection to the application of equitable estoppel relies on a misunderstanding of Florida contract law. Florida courts have recognized "two situations" in which equitable estoppel principles may compel a signatory to arbitrate his claims against a non-signatory. *Fla. Roads Trucking, LLC v. Zion Jacksonville, LLC*, 384 So. 3d 817, 819 (Fla. Dist. Ct. App. 2024). The first of those situations is the one identified by Plaintiffs: "when the claims relate directly to the contract and the signatory is relying on the contract to assert its claims against the non-signatory." *Fla. Roads Trucking*, 384 So. 3d at 820 (citation modified). But Samsung does not argue in its motion to compel that Plaintiffs' claims against Samsung rely on their subscriber agreements with T-Mobile and Verizon. Rather, it invokes the second situation that Florida courts have held justify the application of equitable estoppel: when "a signatory to a contract

containing the arbitration clause raises allegations of substantially interdependent and concerted misconduct by both a non-signatory and one or more of the signatories to the agreement." *Kratos Invs. LLC v. ABS Healthcare Servs., LLC*, 319 So. 3d 97, 101 (Fla. Dist. Ct. App. 2021); *accord Fla. Roads Trucking*, 384 So. 3d at 820.

Florida courts do not require a non-signatory to show both concerted misconduct and that the claims against them rely on the contract containing the arbitration agreement. Non-signatories can invoke either or both theories of equitable estoppel as fits the facts of their case. *See, e.g.*, *Integrated Health Servs. at Cent. Fla., Inc. v. Est. of DeSantis by & through DeSantis*, 407 So. 3d 547, 552–53 (Fla. Dist. Ct. App. 2025) (addressing "both [equitable estoppel] exceptions" independently and finding equitable estoppel warranted because "both claims . . . necessarily entail concerted misconduct between Compass Point and signatory Laurel Point"); *Fla. Roads Trucking*, 384 So. 3d at 820 ("The Trucking Companies argue that Zion's claims fit *both paradigms*" of equitable estoppel); *Lash & Goldberg LLP v. Clarke*, 88 So. 3d 426, 428 (Fla. Dist. Ct. App. 2012) (addressing only concerted misconduct prong and finding equitable estoppel warranted because plaintiff "alleged concerted misconduct by non-signatories . . . and signatories"); *Kolsky v. Jackson Square, LLC*, 28 So. 3d 965, 970 (Fla. Dist. Ct. App. 2010) (addressing only concerted misconduct prong and finding equitable estoppel warranted because "claims against the non-signatory appellants ar[ose] out of the same allegations of concerted conduct among the non-signatory appellants and [a signatory], are based on the same facts, and are inherently inseparable"); *Armas v. Prudential Sec., Inc.*, 842 So. 2d 210, 212 (Fla. Dist. Ct. App. 2003) (addressing each theory of equitable estoppel separately and finding equitable estoppel warranted because claims against non-signatory "ar[ose] out of the

same factual allegations of concerted conduct by both the non-signatory . . . and the signatories").

Accordingly, Samsung need not show that Plaintiffs' claims rely on their T-Mobile or Verizon subscriber contracts for equitable estoppel to apply. The question, instead, is whether the signatory's claims allege "substantially interdependent and concerted misconduct" by Samsung and T-Mobile or Verizon. *Fla. Roads Trucking*, 384 So. 3d at 819. In addition, because equitable estoppel "does not expand the scope of disputes subject to arbitration," Florida courts will not apply equitable estoppel to an arbitration clause that limits its application to disputes between the parties of the arbitration agreement. *Beck Auto Sales*, 249 So. 3d at 768 (citation modified) (declining to apply equitable estoppel to "arbitration provision [that] generally limited its applicability to disputes 'between the parties' to the arbitration agreement"); *Kroma Makeup EU, LLC v. Boldface Licensing + Branding, Inc.*, 845 F.3d 1351, 1354–55 (11th Cir. 2017) (similar). On the other hand, "arbitration provisions containing the language, 'arising out of or related to,' in certain instances can be construed to include non-signatories." *Armas*, 842 So. 2d at 211; *see Kratos Invs.*, 319 So. 3d at 101–02 (applying equitable estoppel to arbitration provision covering "any dispute arising out of or related in any way to" the agreement).

Applying these principles here, the Court concludes that Plaintiffs must arbitrate their claims against Samsung. Both T-Mobile's and Verizon's arbitration agreements, which cover all three Individual Plaintiffs, contain the kind of broad language sufficient to evince an intent to arbitrate claims with nonsignatories. Under T-Mobile's arbitration agreement, subscribers agree to arbitrate "any and all claims or disputes, of any nature, including tort and statutory claims, in any way related to or concerning the agreement." Dkt. 30-43 at 7. Verizon's arbitration

agreement contains similar language, requiring subscribers to arbitrate "any dispute that in any way relates to or arises out of this agreement." Dkt. 30-52 at 8. These agreements use broad language intended to cover the widest possible array of claims and do not "expressly restrict[] arbitration to the signing parties," *Koechli*, 870 So. 2d at 945, and are therefore amenable to enforcement by non-signatories. *See also Mid-Am. Apartment Communities, Inc. v. Gonzalez*, 406 So. 3d 362, 364 (Fla. Dist. Ct. App. 2025) ("On the other hand, the phrase 'arising out of or relating to' the contract has been interpreted broadly to encompass virtually all disputes between the contracting parties, including related tort claims.").

Beyond this broad language, requiring the Individual Plaintiffs to arbitrate their claims against Samsung is appropriate here because the service at the center of Plaintiffs' antitrust and RICO claims in this case—Wi-Fi calling—is offered by the Carrier Defendants on the terms set out in their subscriber agreements. Indeed, taking Plaintiffs' claims on their own terms, the allegedly unlawful conduct at issue in this case, as in Plaintiffs' other cases, involves a conspiracy between the Platform and Carrier Defendants to permit the Carrier Defendants to extract supercompetitive prices from their customers—that is, from those who entered into the subscriber agreements with T-Mobile and Verizon (and AT&T). Dkt. 7 at 69 (Am. Compl. ¶ 178). Plaintiffs' alleged injury, for example, is the payment of "supracompetitive bundle prices" to the Carrier Defendants for cellular plans that include Wi-Fi calling. Dkt. 7 at 10 (Am. Compl. ¶ 26); *see id.* at 67 (Am. Compl. ¶ 168) ("As a direct and proximate result of the Agreement/Conspiracy . . . Plaintiffs . . . suffered antitrust injury, including . . . paying for bundle premiums to unlock native calling (including Wi-Fi calling) . . . ."). The Platform Defendants' principal role in the alleged conspiracy is to design their operating systems in a manner that enables Carrier Defendants to sell the bundled cellular service and Wi-Fi calling

plans at a premium. *See, e.g.*, *id.* at 46 (Am. Compl. ¶ 114) ("The Carrier Co-Conspirators drive a business model to force tying and the Platform Provider Defendants (Apple, Google, Samsung) enable the tie at the device level."); Dkt. 7-2 at 2 (alleging that the Platforms have "creat[ed] a two-tier system that protects the carriers' traditional business models"). Similarly, the tying arrangement alleged in this case consists of "native Wi-Fi calling"—which is itself a Frankenstein combination of the Platforms' operating systems and the Carriers' cellular plans—and "carrier bundles," which are sold only by the Carrier Defendants. Dkt. 7 at 24, 73 (Am. Compl. ¶¶ 24, 194). If that were not enough, the racketeering activity forming the basis of Plaintiffs' RICO claims is mail and wire fraud based on statements made exclusively by the Carrier Defendants about the price of Wi-Fi calling. *See id.* at 52, 80 (Am. Compl. ¶¶ 129, 229); Dkt. 7-4 (depicting the allegedly misleading statements).

In short, Plaintiffs rely on the Carrier Defendants' offering of bundled cellular service and Wi-Fi calling plans to establish their antitrust injury, the existence of the conspiracy, the occurrence of anticompetitive conduct, the racketeering activity underlying their RICO claims, and their damages. It would create precisely the kind of unfair circumstances addressed by the equitable estoppel doctrine to allow Plaintiffs to invoke their subscriber agreements with the Carrier Defendants to establish the Platform Defendants' liability while avoiding arbitration under those same agreements. *See Koechli*, 870 So. 2d at 945.

With the breadth of T-Mobile's and Verizon's arbitration agreements established, the Court easily concludes that the Individual Plaintiffs' claims rely on allegations of the type of "substantially interdependent and concerted misconduct" that justify application of principles of equitable estoppel. *Fla. Roads Trucking*, 384 So. 3d at 819 (citation modified). The first paragraph of the amended complaint alleges that the Platform Defendants and their "Carrier Co-

Conspirators . . . have combined and conspired to monopolize or attempt to monopolize native telephony calling (including Wi-Fi calling)." Dkt. 7 at 2 (Am. Compl. ¶ 1). The amended complaint is littered with allegations that the Platform and Carriers Defendants engaged in a conspiracy or an association-in-fact with the purpose of dominating the market for Wi-Fi calling. *See id.* at 3 (Am. Compl. ¶ 4) ("The Platform Provider Defendants and the Carrier Co-Conspirators engage the Lock-and Key system . . . so that native Wi-Fi calling is functionally conditioned on purchase/retention of carrier voice/text bundles . . . ."); *id.* at 7 (Am. Compl. ¶ 18) ("Together the Platform Provider Defendants and the Carrier Co-Conspirators ensure that only bundled carrier lines are treated as native."); *id.* at 10 (Am. Compl. ¶ 24) ("The Platform Provider Defendants (and the Carrier Co-Conspirators) act as one enterprise maintain monopoly power of Wi-Fi Calling in violation of Sherman Act § 2."); *id.* at 51 (Am. Compl. ¶ 126) ("Apple, Google, Samsung (the "Platform Provider Defendants"), together with AT&T, Verizon, and T-Mobile (the "Carrier Defendants"), form an association-in-fact enterprise under 18 U.S.C. § 1961(4)."); *id.* at 52 (Am. Compl. ¶ 129) ("The Platform Provider Defendants and Carrier Co-Participants engaged in a pattern of racketeering consisting of fraudulent messaging and transmitted uniform 'Wi-Fi Calling is included at no additional charge' messages . . . ."). The Amended Complaint refers to the Carrier Defendants as co-conspirators or co-participants no fewer than 45 times. *See, e.g.*, *id.* at 2, 10, 28 47, 50–53 (Am. Compl. ¶¶ 1, 24, 75, 125, 128–32).

Plaintiffs do not dispute that they have alleged "substantially interdependent and concerted misconduct." *See, e.g.*, Dkt. 35 at 22 (arguing that "[c]oncerted misconduct" among platform providers and carriers is coordinated market behavior" and does not "arise[] from rights or obligations created by consumer subscriber agreements"). Nor could they. Their response to

the motion to compel acknowledges that their claims against Samsung "arise[] from coordinated platform- and carrier-level architecture operating across six defendants and two industry tiers." Dkt. 35 at 8. It resists arbitration precisely because Plaintiffs' "claims arise from interdependent conduct across multiple defendants and proceedings," arguing that "compelling arbitration of a single defendant's role would fragment adjudication of the same structural restraint and undermine the Court's coordinate management of related cases." *Id.*; *see also* Dkt. 5 at 1 (notice that Platform case is related to Carrier case because it "involves common issues of fact" and "grows out of the same event or transaction"). But that flips the governing doctrine on its head; because Plaintiffs' claims against the Platform Defendants allege that they acted in concert with the Carrier Defendants as a "unified enterprise" to commit the antitrust and RICO violations alleged in the complaint, Dkt. 7 at 13 (Am. Compl. ¶ 35), equitable estoppel is warranted.[2] Finally, Plaintiffs fail to identify any law holding that equitable estoppel presents an all or nothing proposition and that it is unavailable if any claims against any defendant might avoid arbitration.[3]

---

[2] *See, e.g.*, *Kratos Investments*, 319 So. 3d at 101 (applying equitable estoppel where signatory "specifically allege[d] the appellants conspired with its agents in a scheme to steal ICD's business by interfering with and causing the agents to breach"); *Greene v. Johnson*, 276 So. 3d 527, 531 (Fla. Dist. Ct. App. 2019) (applying equitable estoppel where plaintiff's claims against non-signatory defendants were "based on the same set of operative facts that Greene alleges against signatory Johnson, that is, a conspiracy by the defendants"); *Lash & Goldberg LLP v. Clarke*, 88 So. 3d 426, 427 (Fla. Dist. Ct. App. 2012) (applying equitable estoppel where complaint alleged that defendants "intentionally 'engaged in a pattern of fraud and deceit" and "conspired to prevent" plaintiff from discovering information); *Citi Cars, Inc. v. Cox Enters., Inc.*, No. 1:17-CV-22190-KMM, 2018 WL 1521770 (S.D. Fla. Jan. 22, 2018) (equitable estoppel warranted where "Plaintiff essentially alleges that Defendants have acted in concert by entering into a conspiracy to restrain trade and force Plaintiff into bankruptcy"); *Gunson v. BMO Harris Bank, N.A.*, 43 F. Supp. 3d 1396, 1402–03 (S.D. Fla. 2014) (equitable estoppel warranted where plaintiff alleged that defendants conspired to engage in illegal lending activities).

[3] It is premature, moreover, to decide whether the arbitrability of certain claims against certain defendants would, as a matter of judicial efficiency, justify staying Plaintiffs' claims against the

2. *Applicability of the Arbitration Agreements*

With the availability of equitable estoppel established, the Court turns to Plaintiffs' contention that the T-Mobile and Verizon agreements do not cover their claims in this action. As Samsung observes, those agreements use broad language, and Plaintiffs' claims against the Platform Defendants are tied to their purchases of cellular plans on the terms set out in the subscriber agreements. But the question of whether the agreements are sufficiently capacious to cover the Individual Plaintiffs' claims in this case is not properly before the Court, because both agreements include delegation clauses that give the arbitrator—as opposed to the Court—authority to decide gateway issues of arbitrability. *See* Dkt. 30-43 at 8–9; Dkt. 30-52 at 8. One of those gateway issues is "whether a concededly binding arbitration clause applies to a certain type of controversy." *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452 (2003). The FAA requires courts to enforce delegation provisions and to leave "any challenge to the validity of the Agreement as a whole for the arbitrator" unless the party opposing arbitration "challenge[s] the delegation provision specifically." *Rent-A-Ctr.*, 561 U.S. at 72; *accord Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 65 (2019). Because Plaintiffs never mention or challenge the delegation provisions of their subscriber agreements, they must raise their challenges to the enforceability of the Verizon and T-Mobile agreements in arbitration.

In sum, then, Plaintiffs do not dispute that they entered into enforceable arbitration agreements with T-Mobile and Verizon Wireless and that those agreements include delegation clauses that delegate arbitrability questions to the arbitrator. They also do not dispute that they

---

remaining defendants pending resolution of the arbitration, since the Court is not yet persuaded that Plaintiffs' remaining claims can survive a threshold motion to dismiss.

have alleged that the Platform Defendants engaged in concerted misconduct with T-Mobile and Verizon Wireless. Those concessions resolve Samsung's motion to compel arbitration.

**D. Claim Splitting**

Finally, the Court turns to the question of claim splitting. In their motion dismiss, the Platform Defendants urge the Court to dismiss VoIP-Pal's claims in this action on the grounds of claim splitting. Dkt. 29-1 at 41-42. As they note, VoIP-Pal filed an earlier action in which it asserts essentially the same claims against the same defendants. *See* Complaint, *VoIP-Pal.com, Inc. v. Apple Inc*., Dkt. 1, 25-cv-01843 (D.D.C. June 11, 2025); Amended Complaint, Dkt. 9, 25-cv-01843 (D.D.C. Sept. 21, 2025). The rule against claim splitting "obligates a plaintiff to 'assert all . . . causes of action arising from a common set of facts in one lawsuit.'" *Steele v. United States*, 144 F.4th 316, 324 (D.C. Cir. 2025) (citation omitted). The rule "'shield[s] parties from vexatious concurrent or duplicative litigation.'" *Id*. at 325 (quoting *Katz v. Gerardi*, 655 F.3d 1212, 1217 (10th Cir. 2011)). A plaintiff impermissibly splits its claim when "the plaintiff seeks 'to maintain two actions on the same subject in the same court, against the same defendant at the same time.'" *Clayton v. District of Columbia*, 36 F. Supp. 3d 91, 94 (D.D.C. 2014) (quoting same). Claim splitting "is a proper basis for dismissal under Rule 12(b)(6)." *Steele*, 144 F.4th at 325.

In response, VoIP-Pal acknowledges that the factual allegations in the two cases overlap but argues that dismissal is not warranted because "they involve different parties, different injuries, and different remedies." Dkt. 34 at 46. On VoIP-Pal's telling, the cases involve different parties because the second case adds the Individual Plaintiffs and class claims and because VoIP Pal appears in the second case "only as a co-plaintiff seeking structural injunctive relief aligned with the consumer class relief." *Id.* at 47. The cases involve different claims: the first case focuses on barring VoIP-Pal from entering the market, while this case focuses on the

related injury to consumers. *Id.* And, finally, the cases involve different remedies because the first case seeks "lost licensing revenue and restoration of market entry opportunities," and this case seeks class damages and declaratory relief. *Id.* at 48.

None of these contentions is responsive to the Platform Defendants' charge of claim splitting. Most notably, VoIP-Pal does not dispute, nor could it dispute, that it is a plaintiff in both cases, that the Platform Defendants are the defendants in both cases, and that both cases turn on the same underlying factual allegations and antitrust and RICO theories of relief. Indeed, Plaintiffs themselves filed a notice of related case in this action, asserting that this case and the earlier-filed case "involve[] common issues of fact" and "grow[] out of the same event or transaction." Dkt. 3. The fact that counsel made the decision to include additional plaintiffs in this case, along with VoIP-Pal, does not negate the fact that VoIP-Pal previously brought an action in this Court against the same defendants based on "the same 'nucleus of facts.'" *Steele*, 144 F.4th at 324 (citation omitted) (cleaned up). Nor does the fact that VoIP-Pal made the decision to focus on different injuries or to seek different relief in the two cases matter. What matters is that in both cases, VoIP-Pal asks the Court to adjudicate its antirust and RICO claims against the Platform Defendants based on their alleged agreement with the Carrier Defendants and alleged "locking" of their operating systems to prevent competitors from entering the market, and there is no reason—and certainly no reason that VoIP-Pal has identified—why it could not have brought its claims against the Carrier Defendants in a single action. In short, the Platform Defendants have carried their burden of showing that that the litigation is duplicative, and VoIP-Pal has offered no justification for bringing multiple suits in the same court against the same defendants based on the same nucleus of operative facts and, indeed, same theories of

relief. That conclusion resolves VoIP-Pal's claims in this action against all of the defendants, with the possible exception of Samsung.

As noted above, Samsung (unlike the other Platform Defendants) has not sought dismissal under Rule 12(b)(6) and, instead, merely asks that the Court stay VoIP-Pal's claims against it in this action pending resolution of the earlier-filed case. Although perhaps overly cautious, Samsung presumably declines to seek dismissal out of fear that, were it do so, the Court might conclude that it has waived or forfeited its right to seek to arbitrate the Individual Plaintiffs' claims against it. But because the cases turn on the same alleged facts, because the final resolution of the earlier-filed action will inevitably control the resolution of VoIP-Pal's claims against Samsung in this case based on principles of collateral estoppel or res judicata, and because the rule against claim splitting serves the judicial interest in "discouraging duplicative proceedings," *Steele*, 144 F.4th at 327, and is premised, at least in part, on the Court's authority to manage its docket, the Court will sua sponte dismiss VoIP-Pal's duplicative claims in this action against Samsung. As explained above, because the Court has done so on its own initiative as a matter of judicial efficiency and docket management, dismissal has no bearing on Samsung's motion to compel the Individual Plaintiffs to arbitrate their claims.

**E. Defendants' Remaining 12(b)(6) Arguments**

At this point, the Court has concluded that the Individual Plaintiffs' claims against Samsung are arbitrable and that, accordingly, their claims against Samsung in this action should be stayed pending arbitration. The Court has also concluded that VoIP-Pal's claims in this case against all of the Platform Defendants should be dismissed on grounds of claim splitting. Finally, the Court has rejected the Platform Defendants' motion to dismiss for lack of standing. That leaves the remaining Platform Defendants' Rule 12(b)(6) motion to dismiss the Individual Plaintiffs' claims. The Court has scheduled oral argument on that motion and, accordingly, will

defer ruling on that portion of Defendants' Rule 12(b)(6) motion until the Court can hear from the parties.

**CONCLUSION**

For the foregoing reasons, Samsung's motion to compel arbitration and stay proceedings, Dkt. 30, is hereby **GRANTED** and the Individual Plaintiffs' claims against Samsung are hereby **STAYED** pending further order of the Court; Apple Inc., Alphabet Inc., and Google LLC's motion to dismiss VoIP-Pal's claims on grounds of claim splitting is hereby **GRANTED** and those claims are hereby **DISMISSED**; and VoIP-Pal's claims against Samsung are hereby **DISMISSED** sua sponte. The Court will **DEFER** ruling on the Platform Defendants' Rule 12(b)(6) arguments relating to the Individual Plaintiffs' claims against Apple Inc., Alphabet Inc., and Google LLC, pending oral argument.

**SO ORDERED**.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date: September 23, 2026